IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| BRIAN ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-032 |
| | ) | |
| KOCHELLE WATTSON, Warden; | ) | |
| WILLIE CARR, Deputy Warden; | ) | |
| CHABARA C. BRAGG, Deputy Warden; | ) | |
| and TIFFANY SAILEM, Unit Manager of | ) | |
| Medical, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Johnson State Prison ("JSP") when he filed his complaint, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated at Riverbend Correctional Facility ("Riverbend") in Milledgeville, Georgia. Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*). The Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*), but the Court may dismiss the complaint or any portion thereof if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary

relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). After a review of Plaintiff's complaint and prior history of case filings, the Court **REPORTS** and **RECOMMENDS** this action be **DISMISSED** without prejudice.

I.      Background

A prisoner attempting to proceed IFP in a civil action in federal court must comply with the mandates of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996). 28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"This provision of the PLRA, commonly known as the three strikes provision, requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998) (internal citations omitted), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 (2007); see also Lomax v. Ortiz-Marquez, 590 U.S. -, 140 S. Ct. 1721, 1726 (2020) ("The point of the PLRA, as its terms show, was to cabin not only abusive but also simply meritless prisoner suits."). The Eleventh Circuit has upheld the constitutionality of § 1915(g) because it does not violate an inmate's right to access the courts, the doctrine of separation of powers, an inmate's right to due process of law, or an inmate's right to equal protection. Rivera, 144 F. 3d at 721-27.

To that end, the "Questionnaire for the Prisoners Proceeding Pro Se Under 42 U.S.C. § 1983" requires that prisoner plaintiffs disclose: (1) whether they ever filed a lawsuit dealing with the same or similar facts involved in the present lawsuit, (2) whether, while incarcerated

2

or detained, they ever filed a lawsuit dealing with facts other than those involved in the present lawsuit, and other than an appeal or request for collateral relief related to their underlying conviction, and (3) whether any such suit filed IFP in federal court was dismissed on the ground that it was frivolous, malicious, or failed to state a claim. (Doc. no. 1, pp. 2-3.) If there is more than one such lawsuit, the additional lawsuits must be described on a separate piece of paper. (Id. at 2.) The prisoner plaintiff is warned that failure to disclose all prior civil cases may result in dismissal of the current case. (Id.)

## II.    Discussion

### A.    Plaintiff's Case Should Be Dismissed as a Sanction for Providing a Dishonest Filing History

Here, Plaintiff denied filing any prior lawsuits other than an appeal or request for collateral relief, and he did not disclose any IFP case that was dismissed on the ground it was frivolous, malicious, or failed to state a claim. (Id. at 3.) However, the Court is aware of at least seven previous § 1983 complaints Plaintiff has filed using the name Brian K. Roberts or John Gilbert; both names have the same Georgia Department of Corrections prison identification number of 630789.[1]  See Roberts v. Gramiak, 5:14-cv-248 (M.D. Ga. July 3, 2014); Roberts v. Smith, 2:13-cv-242 (N.D. Ga. Oct. 21, 2013); Roberts v. Mills, 6:06-cv-60 (S.D. Ga. June 26, 2006); Roberts v. Jones, 6:01-cv-49 (S.D. Ga. Apr. 4, 2001); Gilbert v. Jones, 5:01-cv-138 (M.D. Ga. Mar. 30, 2001); Gilbert v. Lewis, 7:00-cv-92 (M.D. Ga. July 24, 2000); Gilbert v. Sanders, 5:96-cv-89 (M.D. Ga. Mar. 8, 1996). One of those seven cases earned Plaintiff a strike under 28 U.S.C. § 1915(g) and raised similar allegations of "grave

---

[1] See https://www.gdc.georgia.gov, follow links Offender Search, Find an Offender, Search Now, I agree, Search by ID or Case Number and enter GDC ID Number 630789 (last visited Aug. 8, 2025).

danger" from fellow inmates and prison staff who are alleged to have continually assaulted and threatened him, albeit at a different institution. Roberts, 5:14-cv-248, doc. no. 10.

The Eleventh Circuit has approved of dismissing a case based on dishonesty in a complaint. In Rivera, the Court of Appeals reviewed a prisoner plaintiff's filing history for the purpose of determining whether prior cases counted as "strikes" under the PLRA and stated:

> The district court's dismissal without prejudice in Parker is equally, if not more, strike-worthy. In that case, the court found that Rivera had lied under penalty of perjury about the existence of a prior lawsuit, Arocho. As a sanction, the court dismissed the action without prejudice, finding that Rivera "abuse[d] the judicial process[.]"

Rivera, 144 F.3d at 731; see also Strickland v. United States, 739 F. App'x 587, 587-88 (11th Cir. 2018) (*per curiam*) (affirming dismissal of complaint based on failure to disclose eight habeas petitions filed in district court); Sears v. Haas, 509 F. App'x 935, 936 (11th Cir. 2013) (*per curiam*) (affirming dismissal of complaint where prisoner plaintiff failed to accurately disclose previous litigation); Redmon v. Lake Cnty. Sheriff's Office, 414 F. App'x 221, 223, 226 (11th Cir. 2011) (*per curiam*) (affirming dismissal, after directing service of process, of amended complaint raising claims that included denial of proper medical care and cruel and unusual punishment for placement in a "restraint chair" and thirty-seven days of solitary confinement upon discovering prisoner plaintiff failed to disclose one prior federal lawsuit); Young v. Sec'y Fla. for Dep't of Corr., 380 F. App'x 939, 940-41 (11th Cir. 2010) (*per curiam*) (affirming dismissal of third amended complaint based on a plaintiff's failure to disclose prior cases on the court's complaint form); Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538368 (N.D. Fla. Mar. 21, 2012) (dismissing case alleging deliberate indifference to serious medical needs where plaintiff failed to disclose new case commenced in interim between filing original

complaint and second amended complaint), *adopted by* Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538336 (N.D. Fla. May 2, 2012).

Indeed, "pursuant to 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an IFP action if the court determines that the action is 'frivolous or malicious.'" Burrell v. Warden I, 857 F. App'x 624, 625 (11th Cir. 2021) (*per curiam*) (citing 28 U.S.C. § 1915(e)(2)(B)(i)). "An action is malicious when a prisoner misrepresents his prior litigation history on a complaint form requiring disclosure of such history and signs the complaint under penalty of perjury, as such a complaint is an abuse of the judicial process." Id.  The practice of dismissing a case as a sanction for providing false information about prior filing history is also well established in the Southern District of Georgia.  See, e.g., Williamson v. Cnty. of Johnson, GA, CV 318-076, 2018 WL 6424776 (S.D. Ga. Nov. 5, 2018), *adopted by* 2018 WL 6413195 (S.D. Ga. Dec. 6, 2018); Brown v. Wright, CV 111-044, 2011 WL 2462017 (S.D. Ga. May 16, 2011), *adopted by* 2011 WL 2461958 (S.D. Ga. June 17, 2011); Hood v. Tompkins, CV 605-094 (S.D. Ga. Oct. 31, 2005), *aff'd*, 197 F. App'x 818 (11th Cir. 2006) (*per curiam*).  Plaintiff's failure to disclose any of his prior filing history discussed above, after receiving an express warning that failure to disclose prior cases could result in dismissal, was a blatantly dishonest representation of his prior litigation history, and this case is subject to dismissal without prejudice as a sanction for abusing the judicial process.[2]

---

[2]Plaintiff's claims in the current complaint concern his conditions of confinement, including an alleged assault and theft of his property, at JSP starting in February 2025. (Doc. no. 1, p. 5.)  Thus, Plaintiff may still timely re-file his § 1983 claims, should he choose to do so.  See Kline v. Warden, No. 21-12620-F, 2021 WL 9203812, at *2 (11th Cir. Dec. 22, 2021) (*per curiam*) (affirming dismissal without prejudice as sanction for dishonest filing history where plaintiff may timely re-file claims).

5

> **B. Even if Plaintiff Had Not Provided a Dishonest Prior Filing History, He Also Fails to State a Claim Upon Which Relief Can Be Granted Because He Did Not Exhaust Administrative Remedies**
>
> **1. The Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Fed. Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).

Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the

6

administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159; see also McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) ("The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." (citation omitted)).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156. "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter, 534 U.S. at 524.

### 2. Administrative Grievance Procedure

Inmates like Plaintiff under the supervision of the Georgia Department of Corrections ("DOC") are subject to the Statewide Grievance procedure governed by the version of the DOC Standard Operating Procedure that resulted in the promulgation of Policy Number

7

("PN") 227.02, which became effective May 10, 2019.[3] The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a

---

[3]The DOC policy cited herein is publicly available. See https://public.powerdms.com/GADOC/documents/105711 (last visited Aug. 8, 2025).

determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### 3.   Plaintiff's Failure to Exhaust

In his complaint, dated March 18, 2025, Plaintiff states he filed a grievance at JSP and "wrote all listed parties her[e]in begging help & for them to do something" about the events alleged to have occurred at JSP in February of 2025, but he never received a grievance response prior to filing his lawsuit. (Doc. no. 1, pp. 3-4, 5, 6.) Plaintiff also concedes that he never filed an appeal to the central office. (Id. at 4.) Thus, the face of Plaintiff's complaint makes clear he did not complete the two-step grievance process prior to filing his federal lawsuit because he did not file an appeal. That is, Plaintiff improperly bypassed the appeals process when he chose not to file a central office appeal when he did not receive a response from the Warden in the allotted forty-day window.[4]

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate

---

[4]The complaint is unclear on the exact date in February 2025 when Plaintiff was allegedly attacked and robbed. (See doc. no. 1, p. 5.) However, whether Plaintiff did not wait the full forty-days allotted for a response to the original grievance, or whether the forty-day window expired without a response, it is clear from the face of the complaint Plaintiff failed to exhaust administrative remedies because as described above, a prisoner may file a central office appeal if the forty-day window has expired without receiving an answer to the original grievance. PN 227.02, § IV(C)(2)(a)(ii).

> in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not filing an appeal would defeat the aims of the PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159. The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id. Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not file a central office appeal.

10

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

### C. The Requests for Injunctive Relief Should Be Denied

Plaintiff also filed multiple requests for injunctive relief. He first complains about his transfer from JSP to Riverbend and seeks changes to his conditions of confinement at Riverbend. (Doc. nos. 14-1, 14-2.) Second, Plaintiff contends his safety at Riverbend is at risk because of the grievances he has filed about his conditions of confinement, and he seeks additional access to the law library, more pens and paper, additional recreation time, and better pest control in his cell, as well as stoppage of a water leak. (Doc. nos. 16-1, 16-2.) Plaintiff does not identify a named Defendant as responsible for causing and/or correcting any of the identified issues. Nor does Plaintiff explain any connection between the conditions of his confinement, including an alleged assault and theft of his property, at JSP upon which he filed his original complaint and the issues raised in his motions for injunctive relief concerning his conditions of confinement at Riverbend.

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse

11

to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiff has not met his burden of persuasion as to all four of these requirements. First, Plaintiff makes no suggestion that the Defendants can provide any of Plaintiff's requested injunctive relief. The Court lacks jurisdiction to enter a restraining order or injunction against those who are not parties to the lawsuit. Holmes v. Williams, Civ. Act. No. 6:15-cv-12, 2015 WL 4429092, at *8 (S.D. Ga. July 20, 2015) (citing In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs., 72 F.3d 842, 842-43 (11th Cir. 1995)), *adopted by* 2015 WL 4866223 (S.D. Ga. Aug. 13, 2015). Additionally, the Court cannot provide injunctive relief where the requested relief bears no connection to the claims brought by Plaintiff's operative pleading. See Benning v. Comm'r, Ga. Dep't of Corr., 71 F.4th 1324, 1340 (11th Cir. 2023), *cert. denied* Benning v. Oliver, 144 S. Ct. 1457 (2024) ("Given the complete lack of connection between the claims pled and the injunctive relief requested, the district court did not err in ruling that such relief was overbroad and inappropriate."). As discussed above, Plaintiff's complaints about Riverbend in the motions for injunctive bear no discernable connection to the events at JSP underlying the instant suit. Moreover, Plaintiff's generalized and conclusory allegations against unspecified individuals fail to establish a substantial threat that he will suffer irreparable injury if the injunction is not granted. Plaintiff fails to address the last two prongs, and there is no basis for finding the threatened injury to him outweighs the damage the proposed injunction may cause the

opposing party, and whether, if issued, the injunction would be adverse to the public interest. Finally, it is well-settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). Under the circumstances presented by this case, the Court will not insert itself into the decision-making process of where to house a prisoner. Accordingly, Plaintiff is not entitled to the relief he seeks, and his motions for injunctive relief should be denied.

### III. Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motions for injunctive relief be **DENIED**. (Doc. nos. 14-1, 14-2, 16-1, 16-2.) Furthermore, because Plaintiff has abused the judicial process by providing dishonest information about his filing history and failed to exhaust administrative remedies prior to filing his complaint, the Court **REPORTS** and **RECOMMENDS** this action be **DISMISSED** without prejudice and the motion for appointment of counsel be **DENIED** as **MOOT**. (Doc. no. 15.)

SO REPORTED and RECOMMENDED this 8th day of August, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA